THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM FLYNN, Appellant.

Argued January 21, 1943; decided April 15, 1943.

*Rudolph Stand, John McKim Minton, Jr.,* and *A. Haskell Schwartz* for appellant.

*Frank S. Hogan*, District Attorney (*Stanley H. Fuld* and *David Riesman* of counsel), for respondent.

LOUGHRAN, J. The defendant has been convicted of murder in the first degree.

On the night of January 21, 1940, he entered a bar and grill in the city of New York intending to commit robbery therein. Among the patrons who were in the place at the time were Claude Phelps and Oscar Ryan. Brandishing a revolver, the defendant said: "This is a stick-up. Get in the back." Ryan was a police officer but was not wearing his uniform. He drew his service revolver which chanced to be unloaded. Thereupon the defendant fired a stray shot and at once backed out of the place. Phelps and officer Ryan followed after him. As they reached the street, he fired another shot from behind an automobile he had parked there. The death of Phelps was the instantaneous result.

These undisputed facts concededly proved guilt of criminal homicide in some degree. With the consent of both sides, the court ruled that the killing was not felony murder. (Penal Law, § 1044, subd. 2.) This was in the absence of the jury. No mention of felony murder was made in the summations of counsel or in the charge of the trial judge. He defined the crime of true murder in the first degree (Penal Law, § 1044, subd. 1) and then read to the jury from *People* v. *Majone* (91 N. Y. 211) as follows: "Under the statute there must be not only an intention to kill, but there must also be a deliberate and premeditated design to kill. Such design must precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection or consideration upon the

matter, for, choice to kill or not to kill, and for the formation of a definite purpose to kill. The human mind acts with celerity which it is sometimes impossible to measure, and whether a deliberate or* premeditated design to kill was formed must be determined from all the circumstances of the case.'' The circumstances of the present case included, of course, the events that took place within the bar and grill before the fatal shot was fired in the street outside. In fact, the testimony consists in far greater part of narrations of those antecedent occurrences in as much as officer Ryan was the only eyewitness to the homicide. The judge, however, gave no direction to the jury respecting the effect of that larger angle of the proof.

This course of the trial seems to have been the reason why the jury halted their deliberations to request further instruction. When they were brought back to the box, the fourth juror (after conferring with foreman) put their difficulty to the trial judge in this way: '' The question is: Does proof of premeditation on the part of the defendant to commit this robbery carry with it responsibility for any other crime committed during the commission of that robbery or attempted robbery?'' The judge made the following answer: '' The defendant is on trial before you and before me solely for the crime of murder as I have earlier explained that crime and its different degrees to you. He is not on trial before you or before me for any other crime.'' Dissatisfied with that response, the juror inquired again: ''But does the proof of the premeditation of one crime, one felony, carry with it the responsibility for any other crime?'' For a further answer, the judge once more defined true murder in the first degree and repeated the words we have quoted from his charge.

At that stage, counsel for the defendant intervened to say: '' I except to your Honor's declination, if it was a declination, to answer the juror categorically, and I ask your Honor to charge the jury that the intent involved in the underlying felony of robbery was not carried over, except in those cases, the so-called felony murders, where the crime is committed while the defendant is actually engaged in the commission of the felony.'' The judge replied: '' Yes. I did not interpret the juror's question as you interpreted it. I thought the jury was asking me to decide a

---

* In the *Majone* case, *supra,* the conjunctive "and" was used (91 N. Y. at p. 212).

question of fact, which I cannot do, because all questions of fact must be decided by the jury." Not content to let the matter rest there, counsel made his point again by this more direct request: " I ask your Honor then to answer the juror's question categorically as no." This time the refusal of the judge was unmistakable. He said: " No; I will answer it as I have answered it. They are the sole judges of all the questions of fact." Nevertheless counsel persistently put in a final word: "Then I will ask your Honor [he said] to charge that this is not a felony murder case." To that much the judge acceded by saying—"Yes, I shall so charge. This is a common law murder case as I have defined murder to you."

We find ourselves unconvinced of the validity of the charge as a whole. The question addressed to the court by the fourth juror — whether proof of premeditation of the attempted robbery carried with it responsibility for any other crime — was purely a question of law which should have been answered unequivocally in the negative. The opposite answer of the judge — that this question was one of fact for decision by the jury exclusively — left open the way for an already envisaged finding of constructive malice; and it is not at all unlikely that the verdict of murder in its highest degree was arrived at through some such inadmissible means. The recondite last word to the jury — that this was a case of common law murder as previously defined and not a case of felony murder — is no sufficient guaranty of the probability of a different result. The jury's words, we repeat, were these: " Does proof of premeditation on the part of the defendant to commit this robbery carry with it responsibility for any other crime committed during the commission of that robbery or attempted robbery? " No other crime was so committed. Had the jury been definitely instructed to that effect the verdict might well have been different. Consequently we feel called upon to order submission to another jury of the one short issue on which the life of this defendant depends. (See *People* v. *Odell*, 230 N. Y. 481, 488, 490.)

The judgment of conviction should be reversed and a new trial ordered.

LEHMAN, Ch. J., FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment of conviction reversed, etc.